2002 ME 70

**Stan HINKLEY et al.**

v.

**PENOBSCOT VALLEY HOSPITAL et al.**

Supreme Judicial Court of Maine.

Argued: April 2, 2002.

Decided: April 18, 2002.

Diane A. Khiel, (orally), Orono, for plaintiff.

Daniel Rappaport, (orally), Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, (for Penobscot Valley Hospital and Blaine), Sandra L. Rothera, (orally), George C. Schelling, Gross, Minsky & Mogul, P.A., Bangor, (for Nesin), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Stan Hinkley and his parents appeal from the judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) dismissing his medical malpractice claim against the Penobscot Valley Hospital (PVH) and Clint Blaine, and the judgment entered in the Superior Court (Penobscot County, *Mead, J.*) dismissing his claim of negligent supervision against Dr. Noah Nesin, Blaine's primary supervising physician. We affirm both judgments.

## I. BACKGROUND

[¶ 2] On January 12, 1998, Stan Hinkley went to the emergency room at the Penobscot Valley Hospital where he was treated by Blaine, a physician's assistant. Hinkley informed Blaine that he was allergic to penicillin. Nevertheless, Blaine prescribed Augmentin, a drug in the penicillin family. Although Blaine called Hinkley after he realized his error, Hinkley had already taken the first dose. As a result, Hinkley suffered a life threatening allergic reaction. Dr. Nesin was not present at the hospital when Blaine prescribed the Augmentin. There is no dispute that PVH is a governmental entity and that Blaine was employed by the hospital at the time of the alleged malpractice.

[¶ 3] On January 9, 2001, Hinkley filed suit against PVH, Blaine, and Dr. Nesin pursuant to the Maine Health Security Act (MHSA), 24 M.R.S.A. §§ 2501–2986 (2000 & Supp.2001). He did not comply with the Maine Tort Claims Act (MTCA), 14 M.R.S.A. §§ 8101–8118 (1980 & Supp. 2001). PVH and Blaine filed a joint motion for a summary judgment in which they argued that, because the hospital is a governmental entity and Blaine was a governmental employee, the MTCA applied to any suits filed against them. They argued that Hinkley's claims against them should be barred for failure to comply with the Act's 180–day notice provision[1] and statute of limitations.[2] The court granted the motion.

[¶ 4] Dr. Nesin also filed a motion to dismiss in which he argued that the claim against him was derivative of the claim against PVH and Blaine, and, therefore, it should also be dismissed on procedural grounds. The court agreed and granted Dr. Nesin's motion.

## II. DISCUSSION

### A. Hinkley's Claim Against the Hospital

[¶ 5] The first question before the court is whether, in light of the MHSA, the procedural provisions of the MTCA apply to medical malpractice actions against governmental entities and their employees. How the MTCA interacts with the MHSA is a question of law that the court reviews de novo. *Heber v. Lucerne–In–Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

[¶ 6] The MTCA states that "[e]xcept as otherwise provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter."[3] 14 M.R.S.A. § 8103 (1980). Section 8104–A provides exceptions to the state's immunity for injuries caused by such things as the negligent operation of state vehicles, the negligent construction and maintenance of state buildings, the accidental discharge of pollutants, and the negligent repair and maintenance of public ways. *Id.* § 8104–A (Supp. 2001). Section 8116 provides another exception to state immunity when the state department, agency, or office acquires liability insurance. *Id.* § 8116.[4] Any action allowed under these exceptions is, howev-

---

1. 14 M.R.S.A. § 8107(1) (Supp.2001) provides:

   Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or a claimant's personal representative or attorney shall file a written notice . . . .

2. 14 M.R.S.A. § 8110 (Supp.2001) provides:

   Every claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues, except that, if the claimant is a minor when the cause of action accrues, the action may be brought within 2 years of the minor's attaining 18 years of age.

3. Governmental employees are immune from personal civil liability for "[a]ny intentional act or omission within the course and scope of employment; provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith." 14 M.R.S.A. § 8111(1)(E) (Supp. 2001).

4. 14 M.R.S.A. § 8116 (Supp.2001) provides:

   The legislative or executive body or any department of the State or any political subdivision may procure insurance against liability for any claim against it or its employees for which immunity is waived under this chapter or under any other law. . . . If the insurance provides coverage in areas

er, subject to the Act's 180–day notice provision and two-year statute of limitations. *Id.* §§ 8107, 8110.

[¶ 7] Nevertheless, when a separate statute expressly waives governmental immunity for a particular wrong, the provisions of that statute exclusively govern any action brought under it. *Id.* § 8113(2) (1980). In such situations, because the MTCA does not apply, claimants are not bound by the Act's procedural requirements.

[¶ 8] We have previously determined that the Legislature intended the MHSA to fully occupy the field of medical malpractice claims brought against health care providers and practitioners. *Butler v. Killoran,* 1998 ME 147, ¶ 6, 714 A.2d 129, 132. Indeed, the MHSA broadly provides that an

"Action for professional negligence" means any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services.

24 M.R.S.A. § 2502(6) (2000). Under this Act, the statute of limitations for a medical malpractice action is three years from the time that the action accrues. *Id.* § 2902.

■ [¶ 9] Hinkley argues that the Legislature waived state immunity for medical malpractice actions through its enactment of the MHSA. He reasons that because the MHSA applies to "*any* action for damages for injury or death against *any* health care provider," it necessarily applies to suits against governmental entities. Essentially, Hinkley argues that we should deem this language to be an express waiver of

where the governmental entity is immune, the governmental entity shall be liable in

governmental immunity. We decline to do so.

[¶ 10] We have stated that "a waiver of governmental immunity is not to be implied." *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 419 (Me.1987). Notwithstanding the obvious breadth of the MHSA, it does not explicitly reference the MTCA, nor does it specifically waive state immunity as to medical malpractice actions. Therefore, because the MHSA does not expressly authorize individuals to bring medical malpractice actions against the state, any such suits must be brought in accordance with the MTCA. *See* 14 M.R.S.A. § 8103.

[¶ 11] Hinkley cites to *Heber,* 2000 ME 137, 755 A.2d 1064 and *Clockedile v. State Dep't of Trans.,* 437 A.2d 187 (Me.1981), for the proposition that when a statute expressly provides for a specific cause of action, a governmental entity may be sued in accordance with the terms of that statute. He argues that because the MHSA expressly provides for medical malpractice actions, he was not required to follow the procedural provisions of the MTCA.

[¶ 12] This argument fails for two reasons. First, the MHSA is a procedural Act. It does not provide for or create the medical malpractice cause of action, but governs how such actions are to be brought. Second, we have never held that an individual could bring suit against a governmental entity under a statute that provides for a specific cause of action without first determining that the statute expressly waived governmental immunity.

[¶ 13] In *Heber,* a 1961 Act specifically stated that the Lucerne–in–Maine Village Corporation "shall be liable to any injured person in an action for the recovery of damages for the overflowing of lands."

those substantive areas but only to the limits of the insurance coverage.

*Heber,* 2000 ME 137, ¶ 2, 755 A.2d at 1065. Heber was a property owner whose lands were flooded due to the failure of the Village to maintain a proper water level. *Id.* ¶¶ 3–5. Heber filed an action for damages against the Village pursuant to the 1961 Act. *Id.* ¶ 4. The Village argued, *inter alia,* that Heber's suit was barred for failure to comply with the notice provisions of the MTCA. *Id.* ¶ 15. We first examined the language of the 1961 Act and concluded that it expressly waived governmental immunity. *Id.* ¶ 14. Only then did we hold that Heber did not have to comply with the MTCA because he brought suit pursuant to the 1961 Act. *Id.* ¶ 15.

[¶ 14] In *Clockedile,* the plaintiffs were injured when they drove into an unmarked ditch in Yarmouth that had been dug for roadwork. *Clockedile* 437 A.2d at 188. They brought suit against the Town and the Maine Department of Transportation under the MTCA. *Id.* at 188 n. 2. In dismissing the suit against the Town, the trial court reasoned that the highway defect statute, 23 M.R.S.A. § 3655,[5] was the exclusive basis of recovery and that the MTCA did not apply. *Id.* at 190. We vacated this judgment. Although we agreed that section 3655 expressly authorized individuals to bring suit against towns, we determined that it was related to the MTCA so that one could recover

> from a town i) only under section 3655 for a claim grounded solely on a highway defect, ii) only under section 8104(4) [of the MTCA] for a claim of negligence not involving a highway defect, and iii) under both section 3655 and section 8104(4) for a claim, as here, involving

both a passive defect and also actionable negligence. *Id.*

[¶ 15] The MHSA, unlike the statutes at issue in *Heber* and *Clockedile,* does not expressly authorize suit against the State. Therefore, claims of medical malpractice against governmental entities and their employees must be brought in accordance with the MTCA as well as the MHSA. Because Hinkley failed to comply with the MTCA's 180–day notice provision and two-year statute of limitations, his claims against PVH and Blaine were properly dismissed.

**B. Hinkley's Claim Against Dr. Nesin**

■ [¶ 16] We turn now to Hinkley's claims against Dr. Nesin. Although we have never before recognized the independent tort of negligent supervision, Hinkley urges us to do so now. However, because we find that Nesin was a governmental employee under the MTCA, we need not address that issue.

■ [¶ 17] The MTCA defines an employee as "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state, or federal funds . . . ." 14 M.R.S.A. § 8102 (Supp.2001). In order to determine whether an individual is an employee under the Act, we must examine the type of function that the individual serves and how that function effects the State's responsibilities and interests. *Kennedy v. State,* 1999 ME 85, ¶ 9, 730 A.2d 1252, 1255. In *Taylor v. Herst,* 537 A.2d 1163 (Me.1988), we decided that a private doctor was acting as a governmen-

---

5. 23 M.R.S.A. § 3655 provides:
   Whoever receives any bodily injury or suffers damage in his property through any defect of want of repair or sufficient railing in any highway, town way, causeway or bridge may recover for the same in a civil action, to be commenced within one year from the date of receiving such injury or suffering damage, of the county or town obliged by law to repair the same . . . .

tal employee under the MTCA when he diagnosed an individual for purposes of involuntary commitment to the Augusta Mental Health Institute *Id.* at 1165. In reaching this conclusion, we examined the role of a physician in the involuntary commitment process and decided that it was "central to effecting the State's important responsibilities of protecting the public and treating the mentally ill." *Id.* (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 428 (Me.1987)). We noted that "[w]ithout protection from civil liability, physicians would be discouraged from examining persons for involuntary commitment, thereby making the process unworkable." *Id.* at 1166.

[¶ 18] In this case, Dr. Nesin contracted with PVH to act as Blaine's primary supervising physician. Under Maine law, a physician assistant can only render medical services if supervised by a physician or surgeon. 32 M.R.S.A. § 3270–A (1999). The kind of supervision furnished by Dr. Nesin allows governmental health care providers to hire physician assistants rather than more costly physicians. As a result, such health care providers are able to continue to provide much needed medical care to rural communities. The role that these supervising physicians serve furthers the State's interest in ensuring the health of its citizenry. The MTCA applies to Dr. Nesin in his capacity as Blaine's primary supervising physician. Therefore, because Hinkley failed to comply with the procedural provisions of the MTCA, his claims against Dr. Nesin were also properly dismissed.

The entry is:

Judgments affirmed.