2002 ME 108

**Mariah NAPIERALSKI**

v.

**UNITY CHURCH OF GREATER PORTLAND**

Supreme Judicial Court of Maine.

Argued: Jan. 9, 2002.
Decided: July 9, 2002.

Verne E. Paradie Jr., Esq. (orally), Trafton & Matzen, Auburn, Edward Rabasco, Esq., Gosselin, Dubord & Rabasco, P.A., Lewiston, for plaintiff.

Anne M. Carney, Esq. (orally), Norman, Hanson & DeTroy, Llc, Portland, (for Unity Church), Robert V. Hoy, Esq., Platz & Thompson, P.A., Lewiston, (for Kenneth Williamson), for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Maria Napieralski appeals from the judgment of the Superior Court (Cumberland County, *Mills, C.J.*) granting Unity

Church of Greater Portland's motion to dismiss. Napieralski argues that (1) we should, for the first time, recognize a cause of action for negligent supervision, and (2) to accommodate her negligent supervision claim, we should re-examine and change our holding in *Swanson v. Roman Catholic Bishop of Portland,* 1997 ME 63, 692 A.2d 441. Because on these facts we do not adopt a cause of action for negligent supervision, we do not reach *Swanson,* and we affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] According to the complaint, Napieralski is a life insurance agent. She attended Unity Church between January and December 1996. During that time, Reverend Kenneth Williamson, a member of the clergy at Unity Church, approached Napieralski about obtaining life insurance. Napieralski agreed to meet him at his home that was owned by Unity Church. Napieralski alleges that Williamson "forced her to perform sexual acts and otherwise sexually assaulted her." Napieralski further alleges that Unity Church "knew or should have known that before Plaintiff was sexually assaulted by Williamson, he had engaged in inappropriate sexual behavior with at least two other women who attended the church," and that despite this knowledge, the Church did not warn or otherwise protect Napieralski.

[¶ 3] Napieralski filed suit against the Church for negligence, negligent infliction of emotional distress, and negligent supervision. The Superior Court, relying on *Swanson,* 1997 ME 63, ¶ 13, 692 A.2d at 445, granted the Church's motion to dismiss the claims, concluding that they were barred by constitutional considerations. The claims were dismissed before any dis-covery took place. Napieralski appeals only the court's dismissal of the negligent supervision claim.

## II. DISCUSSION

■ [¶ 4] When reviewing a trial court's dismissal of a complaint, we view the facts alleged in the complaint as if they were admitted. *Johanson v. Dunnington,* 2001 ME 169, ¶ 2, 785 A.2d 1244, 1245. We then "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.,* 2000 ME 162, ¶ 3, 759 A.2d 217, 220.

[¶ 5] Napieralski did not seek more time or a remand for discovery before the trial court or in argument to us. Thus, we take the facts alleged in the complaint as the best representation of Napieralski's case. To overturn the trial court's ruling, Napieralski must convince us to change the law regarding both *Swanson* and negligent supervision. Change on only one point gets her nothing.

■ [¶ 6] We have not recognized the tort of negligent supervision in Maine. *Hinkley v. Penobscot Valley Hosp.,* 2002 ME 70, ¶ 16, 794 A.2d 643, 647.[1] Those states that have recognized a negligent supervision claim have typically based the claim on the elements articulated in section 317 of the Restatement (Second) of Torts. *E.g., Dairy Rd. Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 992 P.2d 93, 121–22 (2000); *Gibson v. Brewer,* 952 S.W.2d 239, 247 (Mo.1997); *Trahan–La-roche v. Lockheed Sanders, Inc.,* 139 N.H. 483, 657 A.2d 417, 419 (1995); *Hutchison*

---

1. In *Hinkley,* we stated: "Although we have never before recognized the independent tort of negligent supervision, Hinkley urges us to do so now." 2002 ME 70, ¶ 16, 794 A.2d at 647. We then resolved the claim at issue on other grounds. *Id.*

*v. Luddy,* 560 Pa. 51, 742 A.2d 1052, 1062 (2000).

■ [¶ 7] Even if we were disposed to recognize a cause of action for negligent supervision, it would be problematic at best to undertake recognition of that tort in this case. Section 317 of the Restatement (Second) of Torts outlines the possible parameters of a negligent supervision cause of action as follows:

> § 317. Duty of Master to Control Conduct of Servant
>
> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 317 (1965).

[¶ 8] The facts here involve contact between adults for the purpose of addressing a private, personal matter unrelated to the business or function of the Unity Church. The contact occurred at the residence of the individual who was allegedly negligently supervised. Recognizing a cause of action for negligent supervision, and extending it to such facts, would go far beyond the scope of any traditional negligent supervision action. Such an interpretation would suggest that employers should become the guarantors of their employee's good conduct in private matters merely because the initial contact with the employee occurred in the regular course of business.

■ [¶ 9] We decline to adopt such an extension of the law. The fact that this misconduct is alleged to have occurred at an employer-owned residence makes no difference in this analysis. Where an employer does provide a residence for employees, it is very different from the employer's premises as addressed in the Restatement. The employee retains rights of privacy and quiet enjoyment in the residence that are not subject to close supervision or domination by the employer. *See State v. DeCoster,* 653 A.2d 891, 893 n. 1, 894 (Me.1995) (holding that employees who live in employer-owned homes have a right to quiet enjoyment of their homes, including the right to receive visitors).

[¶ 10] Napieralski does not allege that Reverend Williamson was engaged in the Church's business, that she was attending any type of religious event with him, or that her presence at his home pertained to church-related matters. Indeed, the only fact alleged in her complaint connecting the Reverend's actions to the Church is the allegation that Napieralski met the Reverend "[a]s a result of her attending Unity Church." On these facts, we decline Napieralski's invitation to adopt an expansive view of the tort of negligent supervision.

[¶ 11] Because this action, limited to a negligent supervision claim, is barred, we need not address *Swanson* or the constitutional issues it raised.

The entry is:

Judgment affirmed.

SAUFLEY, C.J., with whom DANA, J., joins, dissenting.

[¶ 12] Although I do not disagree with the Court's conclusion that it has insufficient facts to reach a *Swanson* analysis, I must respectfully dissent because I do not believe that dismissal at this stage in the proceeding is warranted.

[¶ 13] We review a judgment entered upon a motion to dismiss by examining "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. A complaint "should not be dismissed unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me.1994).

[¶ 14] Here, Napieralski alleges in her complaint that she was sexually assaulted on Church property, that the Church knew or should have known of prior sexual assaults on parishioners committed by Williamson, and that the Church failed to warn or protect her. Napieralski's complaint could be read to state a claim for negligent supervision.[2] Further discovery is required to ascertain whether there are sufficient facts to support these allegations. Without specific facts, it is impossible to fully consider the merits of adopting the tort of negligent supervision as it is articulated in the Restatement or in some alternative form.

[¶ 15] More important, the dearth of facts in the record makes it difficult to gauge whether Napieralski's lawsuit is barred by constitutional considerations. In *Swanson v. Roman Catholic Bishop of Portland,* the plaintiffs were a couple who sought marriage counseling from their priest, and they alleged that the priest initiated a *consensual* sexual relationship with the wife during individual counseling sessions. 1997 ME 63, ¶¶ 2–3, 692 A.2d 441, 442. We concluded that, on the specific facts of the case, "imposing a secular duty of supervision on the church and enforcing that duty through civil liability would restrict its freedom to interact with its clergy in the manner deemed proper by ecclesiastical authorities and would not serve a societal interest sufficient to overcome the religious freedoms inhibited." *Id.* ¶ 13, 692 A.2d at 445.

[¶ 16] We have since indicated that there may be circumstances where the balancing of interests test articulated in *Swanson* might effect a different result. *See Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,* 1999 ME 144, ¶ 9 n. 2, 738 A.2d 839, 843. Here, Napieralski alleges that she was forced to perform sexual acts by Williamson, making her a victim of alleged criminal conduct. She further alleges that the Church was aware of other incidents of sexual misconduct committed by Williamson, possibly assaultive, possibly in his clerical capacity, and possibly on Church property, and that it failed to take action to prevent Williamson from using his position with the Church to assault women congregants. There is thus a potentially stronger public interest at stake in this case than was apparent in *Swanson.* Without more specific facts, however, we cannot determine whether the societal interest in permitting the case to go forward is sufficient to justify an intrusion into ecclesiastical affairs. Moreover, absent

---

**2.** These allegations would be sufficient to state a claim for negligent supervision pursuant to the Restatement (Second) of Torts § 317 (1965).

discovery it is impossible to ascertain the extent to which church doctrine is implicated. *See Graffam v. Wray,* 437 A.2d 627, 631 (Me.1981) (holding that the application of neutral principles of law to property disputes does not implicate religious doctrine); *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 471–72 (8th Cir.1993) (holding that on a motion to dismiss, the court cannot "predict that the evidence offered at trial will definitely involve ... an impermissible inquiry into the Synod's bylaws or religious beliefs.... If further proceedings reveal that this matter cannot be resolved without interpreting religious procedures or beliefs, the district court should reconsider the Synod's motion to dismiss.").

[¶ 17] Although Napieralski's complaint may not withstand a motion for summary judgment either on constitutional grounds or regarding her claim for negligent supervision, given the present posture of this case, we must read the complaint "in the light most favorable to" Napieralski. *See Webb v. Haas,* 665 A.2d 1005, 1010–11 (Me.1995). I would remand the case for limited discovery to determine whether the facts propounded by Napieralski are of a nature that would justify permitting the case to go forward against a religious institution and, if so, whether they warrant the recognition of a claim for negligent supervision.[3]

---

3. Unlike in *Swanson,* where the parties had engaged in "considerable discovery activity," 1997 ME 63, ¶ 5, 692 A.2d at 442, Napieralski's complaint was dismissed before any discovery took place.