STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss.                                    CIVIL ACTION
                                               DOCKET NO: #CV-17-063

RECEIVED & FILED

MAY    1 2020

ANDROSCOGGIN
SUPERIOR COURT

HERBERT WARRANDER,                     )
                                       )
            Plaintiff,                  )            COMBINED ORDER
                                       )
v.                                     )
                                       )
MAINE DEPARTMENT OF CORRECTIONS,       )
JOSEPH FITZPATRICK, JEFFERY MORIN,     )
SCOTT MCCAFFERY, DIANE SLEEK,          )
ANDROSCOGGIN COUNTY SHERIFF            )
SGT. MARTIN FOURNIER AND               )
STEPHEN BROUCHU,                       )
                                       )
            Defendants.                )

## I.    Introduction

There are currently five pending motions before the court. There are certain issues that are

raised by more than one defendant; those issues will be addressed generally, and then, if needed,

the Court will address the issue as it pertains to specific defendants. This combined order will

address all outstanding motions in this case.

This case presents a complicated factual and procedural history. At the complaint's core,

it appears that the Plaintiff, an incarcerated pro se litigant, is asking the Court to rule that Maine

Department of Corrections has erroneously denied the Plaintiff "597 days credit; for time served

day for day and an additional 154 days statutory good time." (Pl.'s Compl. ¶ 18.) For the following

reasons the Plaintiff's complaint is hereby dismissed in its entirety.

## II.    Facts and Procedural History

Herbert Warrender ("Warrender" or "Plaintiff") filed his complaint—entitled "Complaint

for Negligence, Including Allegations that Plaintiff is Unable to Determine Definitely which of

1

Several Persons Involved"—on May 15, 2017. Plaintiff also filed a complaint in the United States District Court for the District of Maine on March 22, 2017. Plaintiff's federal claim was ultimately dismissed. The allegations of both claims stem from events that occurred after the Plaintiff was arrested for forgery in 2010.

The Plaintiff's complaint lists nine defendants: Maine Department of Corrections ("MDOC"), Joseph Fitzpatrick, Jeff Morin, Scott McCaffery, Diane Sleek, Unknown Agents, Androscoggin County Sheriff's Office, "Fournier—Sergeant", and Stephen Brochu.[1] The first five defendants listed above are represented by Alisa Ross, an Assistant Attorney General, and for the purposes of this order will be referred to as "MDOC Defendants." Stephen Brochu is represented by Attorney Rebecca Brochu and will be referred to as "Brochu." Sergeant Fournier is represented by Attorney John Wall. This is important to note because there are certain pending motions that are only on behalf of either the MDOC Defendants, Brochu, or Sergeant Fournier and the outcome of these motions may have legal significance for some defendants and not for others.

The Plaintiff was arrested on October 6, 2010 for Forgery Class B. On October 12, 2010 the Plaintiff made his initial appearance and was held on a one-thousand-dollar bond and remained in custody. At that point, Brochu was appointed counsel for Warrender. After making his initial appearance, Plaintiff was hospitalized after suffering multiple seizures at the Androscoggin County Jail. Then, as Plaintiff recounts in his complaint, "[o]n or about December 20, 2010; Jail Administrator Lebel made a telephonic motion to [the Superior Court] seeking that the Plaintiff be released on a personal recognizance bail bond before Judge Clifford. All parties with the exception

---

[1] In his complaint, Plaintiff lists Joseph Fitzpatrick as "Commissioner"; Jeffery Morin as "Superintendent"; Scott McCaffery as "Director of Classification"; Diane Sleek as "AAG"; "Fournier—Sergeant"; and Stephen Brochu as "Attorney at Law."

2

of the Plaintiff agreed. Prior to this date, Defendant Brochu was appointed counsel for the Plaintiff's criminal proceeding not a guardian ad litem." (Pl.'s Compl. ¶ 5.) Further, Plaintiff states

> that on or about December 20, 2010 that Defendant Fournier failed to execute a legal personal recognizance bail bond contract to the Plaintiff at the Central Maine Medical Center in which the Plaintiff was hospitalized for multiple seizures in the Intensive Care Unit both, medically and mentally legally impaired and could not legally enter into an agreement of with informed consent. Defendant Fournier violated the Plaintiff's 14ᵃ Amendment protections of due process since the Plaintiff was heavily sedated and unconscious on a ventilator. Due to this, Defendant Fournier and Brochu denied the Plaintiff 168 days of jail credit to his sentence; which further caused additional mental and medical harm.

*Id.* at ¶ 6. According to the Plaintiff, on June 6, 2011, the Court revoked the personal recognizance bail bond and ordered the Plaintiff be "held in custody so that he would receive credit for his State case." *Id.* at ¶ 8. Plaintiff further alleges that MDOC "fail[ed] to recognize [the Court's] ruling and therefore has caused both 5th and 8th Amendment violations depriving the Plaintiff credit for time served." *Id.* Finally, Plaintiff claims that MDOC failed to communicate with the Federal Bureau of Prisons which he believes they were required to do under 34-A M.R.S.A. 9601; 17-A M.R.S.A. 1253; and "18 U.S.C. App II (Interstate Agreement of Detainers." *Id.* at ¶ 9.

Defendant Brochu filed a Rule 35 motion on October 12, 2012 (according to Plaintiff) or September 21, 2012 (according to Brochu) which the Plaintiff claims he did not have any knowledge of until January 27, 2017.

III.  **Analysis of Pending Issues**

a.  Plaintiff's Motion for Judgment on the Pleadings

Plaintiff filed a motion for judgment on the pleadings on May 23, 2019. Attached to the motion was a memorandum of law. The memorandum, however, spends more time restating factual assertions than discussing the legal veracity of the motion.

3

Rule 12(c) of the Maine Rules of Civil Procedure states that "after the pleadings are closed . . . any party may move for judgment on the pleadings." M.R. Civ. P. 12(c). "When the plaintiff moves for judgment on the pleadings, the motion 'challenges the legal sufficiency of the answer.'" *Temple v. DiPietro*, 2015 ME 166, ¶ 27, 130 A.3d 368 (*quoting* 2 Harvey, *Maine Civil Practice* § 12.14 at 432 (3d ed. 2015)). "Therefore, '[i]t can be effective only when the sole defense is an affirmative one, because any denials of fact by defendant will be taken as true for purposes of the motion and this will have to be tried." *Id.*

Here, it is the Court's view that the pleadings have not closed. While it is true that we have responsive pleadings by all defendants;[2] these pleadings challenge the procedural validity of the Plaintiff's pleadings and do not constitute an answer. Therefore, because the pleadings have not closed, the Plaintiff's motion is mistimed and must be denied.

b. Plaintiff's "Motion for Partial Summary Judgment By Default"

Plaintiff asks this Court to enter "Partial Summary Judgment by Default" against the following Defendants: Joseph Fitzpatrick, Jeffery Morin, Scott McCaffery, Diane Sleek, Unknown Agents, and Stephen Brochu. Plaintiff claims he "commenced service upon [the foregoing defendants] under the 'mailbox rule'" and each of the defendants knowingly failed to respond. (Pl.'s Mot. Partial Summ. J. by Default 1-2.) Despite the fact that the motion does not cite any of Maine's Rules of Civil Procedure—and that the title of the motion is a bit confusing—the Court believes the Plaintiff's motion is one for default and not a motion for summary judgment due to the multiple references to the plaintiff's belief that the defendants knowingly failed to respond. Although the Court is confident in placing this motion under the purview of M.R. Civ. P. 55, it is

---

[2] *See generally Defendant, Stephen Brochu's Response in Opposition to Plaintiff's Motion for Default Judgment; Defendant Sergeant Fournier's Motion to Dismiss, with Incorporated Memorandum of Law; and Response in Opposition to Plaintiff's Motion for Default Judgment.*

not certain which subsection the Plaintiff seeks to invoke: Rule 55(a) or 55(b). The Court will analyze the Plaintiff's claims under each section.

### i.    Rule 55(a)

The clerk of the court is empowered by M.R. Civ. P. 55(a) to enter a default so long as the following requirements are met: (1) The defendant must not have entered an appearance; (2) The plaintiff's claim must be for a sum certain or a sum which can be made certain by computation; and (3) The plaintiff must request the entry of judgment and file an affidavit showing the amount due and an affidavit that the defendant is not a minor or incompetent. 3 Harvey and Merritt, *Maine Civil Practice* §55.3 at 202 (3d, 2015-2016 ed.). "Unless all of these requirements have been complied with, the clerk is powerless to grant the default judgment, and application must be made to the court under the provisions of Rule 55(b)(2)." *Id.* at 203.

In this case, the Plaintiff's claim is not for a sum certain. The Plaintiff's complaint asks for both compensatory damages—which have not been verified or substantiated—and punitive damages. These are not the types of damages that can be characterized as "a sum certain." Therefore, the motion cannot succeed under Rule 55(a).

### ii.    Rule 55(b)

Whether or not the Court should enter a default judgment pursuant to M.R. Civ. P. 55(b) is a question of discretion. When deciding this issue, the Court considers two questions: "(1) should the default judgment be entered; and (2) what should the judgment be in amount and kind? . . . [T]he court exercise[s] its discretion, balancing the importance of the parties being diligent in the trial of cases against the general disfavor with which the law views judgments by default." *Id.* at 204. The Law Court agrees that it is up to the discretion of the trial court whether or not to enter a default judgment. *See Millet v. Dumais*, 365 A.2d 1038, 1040 (Me. 1976).

5

This case presents complicated factual questions, intricate procedural problems, and important policy issues all of which involve disputed allegations. Meanwhile, the Defendants have all filed motions with the Court. This is not a case where the Court has proof of successful service upon apathetic defendants. To the contrary, Defendants both contest and challenge service within a reasonable time of becoming aware of the motion for default against them. For these reasons, the Plaintiff's motion must fail under 55(b) as well.

c. Res Judicata

Multiple defendants raise the issue of *res judicata* with the Court. The issue has the potential to be dispositive of the entire complaint, so the Court will address the issue on behalf of all Defendants at once.

"In determining the preclusive effect of a federal court judgment, federal law controls." *Brown v. Osier*, 628 A.2d 125, 127 (Me. 1993). "Under federal law, the essential elements of *res judicata* . . . are (1) a final judgment on the merits in the earlier action; (2) an identity of the cause of action in the prior action and the present action; and (3) an identity of the parties or privies in the two suits." *Id.* Under *res judicata*, two causes of action are considered identical "as long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint." *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1166 (1st Cir. 1991).

Elements two and three of the federal test for claim preclusion are easily satisfied here. The parties here are identical; and, the court in Warrender's federal claim considered the same 'transaction or series of transactions' as Warrender asks this Court to consider. Accordingly, these two elements of claim preclusion are satisfied.

The first element requires more attention. The Defendants believe that the federal judgment serves as a decision on the merits pursuant to Fed. R. Civ. P. 41(b) and, therefore, is automatically

6

entitled to claim preclusive effect. Fed. R. Civ. P. 41(b) states that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under this Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Defendants argue that the plain language of Fed. R. Civ. P. 41(b) is clear and requires the application of *res judicata*. The argument seems logical on its face; however, the Supreme Court disagrees.

In *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court rejected the argument that "all judgments denominated 'on the merits' are entitled to claim-preclusive effect." 531 U.S. at 501. According to the Supreme Court the "original connotation of an 'on the merits' adjudication is one that actually 'passes directly on the substance of a particular claim' before the court." *Id.* at 501-02. The Court noted that this definition remains very common throughout jurisdictions and, it believes, is "the meaning intended in those many statements to the effect that a judgment 'on the merits' triggers the doctrine of *res judicata* or claim preclusion." *Id.* at 502 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5 (1979)). The Supreme Court admits, however, that over the years the term "judgment on the merits" has evolved. "[The term] has come to be applied to some judgments . . . that *do not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect." *Id.* The Court's view can be succinctly stated as follows:

> In short, it is no longer true that a judgment "on the merits" is necessarily a judgment entitled to claim-preclusive effect; and there are a number of reasons for believing that the phrase "adjudication on the merits" does not bear that meaning in Rule 41(b). To begin with, Rule 41(b) sets forth nothing more than a default rule for determining the import of a dismissal (a dismissal "on the merits," with the three stated exceptions, unless the court "otherwise specifies"). This would be a highly peculiar context in which to announce a federally prescribed rule on the complex question of claim preclusion, saying in effect, "All federal dismissals (with three specified exceptions) preclude suit elsewhere, unless the court otherwise specifies.

*Id.* at 503. The Court goes on to explain that

> the key to a more reasonable interpretation of the meaning of "operates as an adjudication upon the merits" in Rule 41(b) is to be found in Rule 41(a), which, in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an "adjudication upon the merits" is the opposite of a "dismissal without prejudice." . . . The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the defendant from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself.

*Id.* at 505. Finally, the Court explains

> . . . the effect of the "adjudication upon the merits" default provision of Rule 41(b) . . . is simply that, unlike a dismissal "without prejudice," the dismissal in the present case barred refiling of the same claim in the [same court as it was originally filed]. That is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts.

*Id.* at 506.

In this case, because Warrender filed an application to proceed *in forma pauperis*, the District Court was obligated to do a preliminary review of the complaint. *Warrender v. Maine Dep't of Corr., et al.*, 2:17-cv-00101-JAW, 1 (D. Me. April 12, 2017). The district court opined that "[a] review of [Warrender's] complaint fails to reveal a basis upon which this Court could exercise either federal question jurisdiction or diversity jurisdiction under 28 U.S.C. §§1331 and 1332." *Id.* at 5. From this alone, it would appear the district court simply believed it lacked subject matter jurisdiction, which would not trigger *res judicata*. However, the district court then broke Warrender's complaint down into four claims and discussed each in turn. The question, therefore, is whether dismissals under the mandatory review provision of the *in forma pauperis* statute ("IFP"), 28 U.S.C. §1915, are given claim preclusive effect.

8

In 1992, the Supreme Court seemed to announce that a dismissal pursuant to the IFP statute should not be afforded *res judicata* effect because "a §1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). The Court relied on the fact that under section 1915(d) the district court had discretion as to whether or not to dismiss the complaint. However, there has since been an amendment to the IFP statute which takes away the district court's discretion in this aspect.

Since the amendment, the 11th Circuit has viewed *Denton* to not stand for the blanket proposition that a dismissal under the IFP statute is not granted *res judicata* effect. Specifically, the 11th Circuit has said that "[i]n *Denton*, the United States Supreme Court construed a prior version of the IFP statute, 28 U.S.C. §1915(d), which granted district courts broad discretion in dismissing complaints as frivolous and allowed them to dismiss an IFP complaint 'if satisfied that the action was frivolous or malicious." *Harmon v. Webster*, 263 Fed. Appx. 844, 845 (11th Cir. 2008). The 11th Circuit opined that since the statutory revision of the IFP statute, when a district court dismisses a claim pursuant to §1915 it no longer does so on a discretionary basis; instead it does so under the mandatory language of §1915(e)(2). *Id.* at 846. In the 11th Circuit's view this means, in conclusion, that when a district court dismisses a complaint pursuant to the mandatory language of §1915(e)(2), the dismissal is afforded *res judicata* effect. *See id.*

The Court is persuaded by the 11th Circuit's reasoning in *Harmon* and will follow its lead. Looking at the federal dismissal in this case, the district court dismissed Warrender's complaint on grounds other than jurisdictional ones. *Warrender v. Maine Dep't of Corr., et al.*, 2:17-cv-00101-JAW, 5-9 (D. Me. 2017). The district court broke down each of Warrender's claims and found none of them to be meritorious. *Id.* The Court is satisfied that the federal judgment in this

case should be given claim preclusive effect. Therefore, the Plaintiff's complaint should be dismissed in its entirety. The Court will nonetheless discuss the other claims.

### d. State Law Tort Claim

MDOC Defendants raise multiple arguments for why the Plaintiff's state law tort claims should be dismissed. All have merit and the Plaintiff has done an inadequate job—even allowing for his *pro se* status—in refuting them.

First, MDOC Defendants argue that the Plaintiff "never filed a written notice of his claim 'with the state department, board, agency, commission or authority whose act or omission is said to have caused the injury and the Attorney General,' as required to do so by §8107 of the MTCA." (Def.'s Mot. Dismiss 11.) (quoting 14 M.R.S.A. §8107(3)(A)). They further point out that §8107 states that "[n]o claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with." 14 M.R.S.A. §8107(4). Plaintiff, in his opposition, provided the Court with records that show he sent a piece of "legal mail"—which he claims to be the required notice—to Alisa Ross on April 25, 2019. The documentation provided to the Court tends to show that the Plaintiff sent AAG Ross copies of the complaint, summons, notice, and all pending motions in this case by certified mail.

Even if the Court were to assume that the Plaintiff's April 25, 2019 correspondence met the notice requirements of § 8107(1), a timing issue remains. Under § 8107, the notice must be filed "[w]ithin 365 days after any claim or cause of action permitted by this chapter accrues . . ." unless the claimant can show good cause for why they could not have reasonably filed within the 365 days. 14 M.R.S.A. §8107(1). Warrender claims that the MDOC Defendants were negligent in 2011 and filed his complaint in May of 2017. Unfortunately for the Plaintiff, even if the Court

10

assumed that the April 25, 2019 mailing met the substantive standards for notices under §8107, it certainly did not meet the '365 days' requirement.

The next argument presented by the MDOC Defendants is even more compelling. As the MDOC Defendants put it,

> Plaintiff asserts that he was originally arrested in 2010, . . . sentenced in February 2012, . . . subsequently released and rearrested in 2012, and his sentence was amended in October of 2012. Despite those actions, Plaintiff did not file this suit until May of 2017, clearly well-beyond the two-year statutory limit established in §8110 of the MTCA . . ..

(Def.'s Mot. Dismiss 11.)

Section 8110 of the MTCA states that "[e]very claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues . . .." 14 M.R.S. §8110. There are limited circumstances where the two-year limitation will be tolled or extended, however, this is not one of those cases. *See Johnston v. Dow* & Coulombe, 686 A.2d 1064, 1066 (Me. 1996). Nor is there a general exception for incarceration. *See Adams v. Landry*, 2:17-CV-00357-JAW, 2018 WL 4265160 (D. Me. Sept. 6, 2018). Therefore, the Court agrees with MDOC Defendants that the state law tort claims against them must be dismissed.

### e. Federal §1983 Claim

MDOC Defendants argue, as a threshold matter, that the Plaintiff's §1983 claims should be dismissed because the MDOC is not a "person" subject to section 1983. (Def.'s Mot. Dismiss 4 n. 2.) The Court agrees.

The Supreme Court has held that "neither a state, state agency, nor a state official sued in an official capacity is a 'person' subject to suit pursuant to §1983." *Winston v. Maine Technical College Sys.*, 631 A.2d 70, 75 (Me. 1993) (citing *Will v. Michigan Dept. of State Police*, 491 U.S.

11

58, 105 (1989)). "Therefore, if the state is the real party in interest, the action is not being maintained against a 'person' subject to suit within the meaning of §1983." *Id.* The Law Court has announced a two-part test to determine whether the state is the real party in interest in a §1983 suit. The court must look at "(1) the relationship between the state and the defendant to determine if the defendant is an alter ego of the state or if it is relatively autonomous; and (2) whether funds to pay a judgment would come from the state treasury." *Id.*

As to the first element, the Department of Corrections is established by 34-A M.R.S. §1202. Under §1202, the Department of Corrections is "responsible for the direction and general administrative supervision, guidance and planning of adult and juvenile correctional facilities and programs within the State." 34-A M.R.S. §1202. Further, the department is a cabinet-level department and is under the control and supervision of the Commissioner of Corrections. *Id.* The Commissioner is appointed by the Governor of Maine and is confirmed by the Legislature. 34-A M.R.S. §1401(1). The Law Court used similar factors in *Winston* to establish that the entity in question had "an intimate relationship with the state and can be regarded as an alter ego for the state." *Winston v. Maine Technical College Sys.*, 631 A.2d 70, 75 (Me. 1993). Even without directly discussing the second element, the Law Court still concluded that the entity was an alter ego for the state. The Court believes the same is true here.

Finally, as far as Plaintiff's §1983 claims against individuals working within the MDOC, they are "shielded by qualified immunity from personal liability for [their] discretionary acts . . .." *Id.* at 76 (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (stating that, as a general matter, government officials performing discretionary functions have qualified immunity which shields them from civil liability as long as "their actions could reasonably have been thought consistent with rights they are alleged to have violated."). "Qualified immunity protects all but the plainly

12

incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In conclusion, it is the Court's belief that all of the Plaintiff's §1983 claims should be dismissed for the above stated reasons.

### f. Defendant Stephen Brochu's Motion to Dismiss

#### i. Failure to State a Claim

A motion to dismiss under M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *State v. Weinschenck*, 2005 ME 28, ¶ 10, 868 A.2d 200. All well-pleaded material allegations are taken as admitted for the purposes of a 12(b)(6) motion. *Oppenheim v. Hutchinson*, 2007 ME 73, ¶ 2 n.1, 926 A.2d 177. 1. "[A complaint is] properly dismissed when it is beyond doubt that the plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Richadon v. Winthrop Sch. Dep't.*, 2000 ME 109, ¶ 5, 983 A. 2d 400.

When deciding a 12(b)(6) motion, the Court "examine[s] the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Staples v. Michaud*, 2003 ME 133, ¶ 8, 836 A.2d 1288 (quoting *Napieralski v. Unity Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A.2d 391). A sufficient claim for relief is defined as "[a] pleading which sets forth a claim for relief . . . [containing] (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks." M.R. Civ. P. 8(a).

Plaintiff argues that Brochu committed malpractice during the Plaintiff's criminal case. "To prove attorney malpractice, a plaintiff must show (1) a breach by the defendant of the duty

13

owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff." *Pawlendzio v. Haddow*, 2016 ME 144, ¶ 10, 148 A.3d 713. "Professional negligence in the context of a legal malpractice action, is the failure to use such skill, prudence and diligence as is reasonable according to the standards of ordinary competent lawyers performing similar services under like conditions." *Id.*

Ignoring the legal conclusions, we must accept as true that Brochu did not consult the Plaintiff about the PR bail bond or the Rule 35 motion. (Pl.'s Coml. ¶ 7.) Further, we must accept Brochu visited the Plaintiff on January 27, 2017 to deliver a copy of the Rule 35 motion—which Plaintiff claims to not have had any knowledge of until that day. (Pl.'s Coml. ¶ 19.) Under the circumstances it is hard to imagine that Plaintiff can make out a claim for attorney malpractice. The Plaintiff acknowledges that he was "heavily sedated and unconscious on a ventilator" after he was transported to the hospital. (Pl.'s Coml. ¶ 6.) It would, therefore, have been impossible for Defendant Brochu to consult with the Plaintiff. As Defendant Brochu points out in his motion to dismiss, "Maine Rule of Professional Conduct Rule 1.2(a) states in part, 'A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." (Def.'s Stephen Brochu's Mot. Dismiss 3) (citing M.R. Prof. Conduct 1.2(a)). Since attorneys may take actions on behalf of their client, an attorney filing a motion on behalf of their client to ensure their client receives life-saving medical treatment cannot be considered to be a "failure to use such skill, prudence and diligence as is reasonable according to the standards of ordinary competent lawyers performing similar services under like conditions." *Pawlendzio*, 2016 ME 144, ¶ 10, 148 A.3d 713. In fact, quite the opposite could be said. Therefore, the Plaintiff's claims against Defendant Brochu for attorney malpractice should be dismissed.

14

## ii. Failure to Exhaust Post Conviction Review Process

Brochu claims that the Plaintiff's claims are precluded because the Plaintiff has not exhausted the required Post Conviction Review (PCR) process. More specifically, Brochu argues that any claim relating to the calculation of his pre-sentence detention credit are exclusively reserved for a PCR proceeding.

The PCR Statute ". . . provides a comprehensive and, except for direct appeals from a criminal judgment, exclusive method of review of those criminal judgment and of post-sentencing proceedings occurring during the course of sentences." 15 M.R.S.A. §2122. Included in the definition of "post-sentencing proceeding" are "court proceeding[s] or administrative action[s] occurring during the course of and pursuant to the operation of a sentence that affects whether there is incarceration or its length . . .." 15 M.R.S.A. §2121(2).

The Law Court has agreed that issues regarding pre-sentence detention credits are "only properly made through post-conviction proceedings." *State v. Bilynsky*, 2008 ME 33, ¶ 3, 942 A.2d 1234 (citing *State v. Crawford*, 2002 ME 113, ¶ 6, 801 A.2d 1002). Pursuant to the clear language of the PCR Statute and the confirmation of the Law Court, all of the Plaintiff's claims regarding the calculation of his sentence are dismissed for failure to exhaust the PCR process.

## IV. **Conclusion**

In conclusion, the Plaintiff's claims must be dismissed for multiple reasons. In addition to *res judicata*, the Plaintiff has failed to exhaust the PCR process, he has failed to state a claim for which relief can be granted, he has missed filing deadlines, and has filed claims against protected entities. The Court has no choice but to dismiss the Plaintiff's complaint in its entirety.

The entry is:

Plaintiff's Complaint is hereby DISMISSED.

Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

May 20, 2020

MaryGay Kennedy
Justice, Superior Court