**PEOPLES HERITAGE BANK**

v.

**CITY OF SACO.**

Supreme Judicial Court of Maine.

Argued Oct. 30, 1989.

Decided Nov. 29, 1989.

Robert E. Hirshon (orally), Jerrol A. Crouter, Drummond, Woodsum, Plimpton & MacMahon, Portland, for plaintiff.

Erland B. Hardy (orally), James F. Molleur, Woodman & Edmands, Biddeford, for defendant.

Before ROBERTS, WATHEN, GLASSMAN and COLLINS, JJ.

GLASSMAN, Justice.

Peoples Heritage Bank ("Bank") appeals the Superior Court's order (Cumberland County, *Alexander, J.*) granting a summary judgment to the City of Saco ("City") and denying the Bank's motion for reconsideration and to alter or amend the judgment. At issue is whether the Bank may recover from the City under an agreement making the city a guarantor for a $180,000 loan to U.S. Peat and its president, Raymond Contarino, neither of whom join in this appeal. Because we find that the City had not accepted federal aid at the time it guaranteed the loan as required by 30 M.R. S.A. § 5153 (1978),[1] we affirm the judgment.

The facts of this case as set forth in *Peoples Heritage Bank v. City of Saco,* 527 A.2d 320 (Me.1987) are briefly summarized as follows. During the first half of 1983, the City began development of its industrial park. The City applied for an Urban Development Action Grant ("UDAG" grant) from the United States Department of Housing and Urban development ("HUD") to help underwrite the project. U.S. Peat was one of four businesses slated to occupy space in the industrial park. On June 3, 1983, HUD forwarded to the City for signature a UDAG grant agreement which included $180,000 funding to purchase capital equipment for U.S. Peat. HUD required certain conditions to be met before any funds could be released.

In early June 1983, the Bank agreed to make an interim loan to U.S. Peat for the purchase of the equipment provided the

---

1. 30 M.R.S.A. § 5153 (1978) provides in pertinent part:

   Notwithstanding any provisions in a charter or special Act of the Legislature, but subject to the constitutional limit on indebtedness, *any ... municipality which has contracted for and accepted an offer or a grant of federal or state aid or both, for a particular project, may by vote of its municipal officers incur indebtedness in anticipation of the receipt of such aid for the particular project by issuing its general obligation notes payable in not more than one year,* which notes may be renewed from time to time by the issue of other notes, provided that no notes shall be issued or renewed in an amount which at the time of such issuance or renewal exceeds the unpaid amount of the federal or state aid in anticipation of which such notes are issued or renewed, as the case may be. (Emphasis added).
   This statute was repealed by P.L.1987, ch. 737, § A, 1 (effective March 1, 1989). The savings clause set forth in P.L.1987, ch. 583, § 61, however, states that this repeal does not affect any "substantive rights and obligations created under the provisions of [Section 5153]."

City guaranteed the loan and gave assurances that the guaranty was legal and enforceable. The City did so and the promissory note and guaranty agreements were executed on June 27, 1983. On July 11, 1983, HUD notified the City that it could not release grant funds unless certain errors and omissions in the environmental assessment of the project were remedied. That same day, U.S. Peat announced its withdrawal from the UDAG proposal.

U.S. Peat and Contarino subsequently failed to repay the loan. In May of 1984, the Bank, U.S. Peat, Contarino and the City entered into an agreement to waive default and extend the period of time for payment. The City again stated that it was legally empowered to guarantee the loan. The loan, however, remained unpaid. When the City refused the Bank's demand to pay the outstanding balance of the loan, the Bank filed suit against the City, U.S. Peat and Contarino for $180,000 in damages plus interest, attorney fees and costs. On July 1, 1986, the Superior Court (Cumberland County, *Brodrick, J.*) granted summary judgment to the Bank, ruling that 30 M.R.S.A. § 5153 (1978) provided statutory authority to the City to guarantee the loan, if it anticipated the receipt of grant money that would extinguish the obligation, and the City appealed from that judgment. On that appeal we found that the record did not establish when and in what form the UDAG grant was accepted by the City. Accordingly, we vacated the Superior Court's order because there existed a genuine issue of material fact as to the City's authority to guarantee the U.S. Peat loan. *Peoples Heritage Bank*, 527 A.2d at 322.

On remand, the Superior Court (Cumberland County, *Alexander, J.*) found that because the City had not accepted the UDAG grant until August 8, 1983, six weeks after the execution of the guaranty, the requirements of section 5153 had not been met. The Superior Court therefore granted the City's motion for summary judgment from which the Bank now appeals. The Bank contends, *inter alia*, as it did before the Superior Court, that the City is estopped to deny it had authority to execute the original guaranty and that by its agreement to waive the default and extend time for payment, the City ratified the original guaranty. We disagree.

The Bank's estoppel and ratification arguments must fail if the City was not authorized to execute the original guaranty. *See Portland Tractor Co., Inc. v. Inhabitants of the Town of Anson*, 134 Me. 329, 332, 186 A. 883, 884 (1936) (if contract is illegal and void when made, neither municipality's prior authorization nor its subsequent ratification can give it validity); *Williams v. Inhabitants of Vinalhaven*, 123 Me. 505, 509, 124 A. 213, 215 (1924) (town cannot ratify *ultra vires* acts, nor will it be estopped from denying liability on completed contracts outside the scope of its powers); and 10 E. McQuillin, *The Law of Municipal Corporations* § 29.104c (3d ed. 1981) ("no ratification or estoppel can make lawful a municipal contract which is beyond the scope of corporate powers, or which is not executed in compliance with mandatory conditions prescribed in the charter or statutes . . ."). This is true even though the Bank has fully performed its part of the guaranty agreement:

> The fact that the other party to the contract has fully performed his part of the agreement, or has expended money on the faith thereof, does not estop the city from asserting ultra vires, nor is a municipality estopped to aver its incapacity to make a contract by receiving benefits thereunder. That is, it cannot be made liable either on the theory of estoppel or implied contract, where it had no capacity to make the contract or where it was made in express violation of law.

10 E. McQuillin, *supra*, at 487 (citations omitted).

The parties in this case concede that both now and at the time of the execution of the original guaranty, all parties were aware that 30 M.R.S.A. § 5153 (1978) controlled the City's authority to execute the guaranty. Section 5153 clearly requires a municipality to contract for *and* accept a federal grant *before* it incurs indebtedness. It is also clear that it was the Bank's obligation to determine whether the statutory criteria of section 5153 had been met. *See State v.*

*Town of Franklin,* 489 A.2d 525, 528 (Me. 1985); and *Sirois v. Town of Frenchville,* 441 A.2d 291, 294 (Me.1982). The Bank neglected to do so, relying instead on the City Solicitor's assurances that the guaranty was enforceable. *See Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 106 (Me.1984) (unauthorized acts of a municipal officer cannot be grounds for estopping the municipality); and *Lewiston v. Grant,* 120 Me. 194, 201–02, 113 A. 181, 185 (1921) (city may not be estopped on ground that its building inspector advised plaintiff to go ahead with construction where ordinance made such construction illegal). There may be circumstances in which a lender may justifiably rely on a certification of facts provided by municipal officials. In this case, however, the City assured the Bank only that the guaranty was legal and enforceable; it never represented to the Bank that the City had accepted the UDAG grant. Moreover, the Bank did not require evidence that the City had accepted the UDAG grant by requesting from the City a copy of the UDAG agreement. Such a simple step would have allowed the Bank to determine whether the requirements of section 5153 had been met. By its failure to do so, the Bank cannot now claim, on the facts of this case, that the City is estopped from denying payment of the loan or that it ratified the guaranty agreement.

Accordingly, the trial court properly held that because section 5153 was not satisfied at the time the city guaranteed the U.S. Peat loan the guaranty is unenforceable and the City cannot be required to repay the loan.

The entry is:

Judgment affirmed.

All concurring.