**PRETI, FLAHERTY, BELIVEAU & PACHIOS**

v.

**Ronald E. AYOTTE, Sr.**

Supreme Judicial Court of Maine.

Argued March 16, 1992.
Decided April 22, 1992.

Daniel Pileggi, George Z. Singal (orally), Gross, Minsky, Mogul & Singal, Bangor, for plaintiff.

Christopher C. Taintor (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

■ Defendant Preti, Flaherty, Beliveau & Pachios appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brodrick, J.*) against its cross-claim and in favor of defendant Ronald E. Ayotte, Sr., in a negligence action commenced by plaintiff Peoples Heritage Bank. The issue on appeal is whether an attorney, acting in his capacity as city solicitor appointed pursuant to the city charter, is immune from suit for negligent representation under the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 & Supp. 1991). We conclude that he is immune and affirm the judgment.

The undisputed facts in the present case, more fully set forth in *Peoples Heritage Bank v. City of Saco,* 527 A.2d 320 (Me. 1987), *after remand,* 566 A.2d 745 (Me. 1989), are as follows: In 1983 the City of Saco began development of an industrial park and applied for a grant from the United States Department of Housing and Urban Development to help underwrite the project. HUD forwarded to the city for signature a UDAG grant agreement that included $180,000 to purchase capital equipment for U.S. Peat, Inc., a business scheduled to operate in the industrial park. The Bank agreed to make an interim loan to U.S. Peat, Inc., for the purchase of the equipment, provided the city guaranteed the loan and gave assurances that the guaranty was binding and enforceable against the city. That assurance, in the form of a document entitled "Opinion and Certificate of Guarantor's Counsel," was provided by Ayotte, a lawyer in private practice who also served as Saco's city solicitor.

The office of city solicitor is established by the charter of the city. Under the terms of the charter, the city solicitor is appointed by the mayor and confirmed by the city council, to "serve as chief legal advisor to the Mayor and the City Council, the City Administrator, and all City departments, boards, agencies, committees and commissions." The charter requires the solicitor to represent the city in all legal proceedings and to perform "any other duties prescribed by ordinance and law." The city's administrative code, enacted pursuant to the city charter, states that the city solicitor's duties shall include drafting "all instruments which may be required of him by ... the Mayor, City Council, City Administrator or any other City official which by law, custom or agreement is to be drawn at the expense of the City." The code requires him to "do all and every professional act incident to the office, of [sic] which may be required of him by the City government" and to "[r]ender professional advice to ... officers of the City Government who may require his/her opinion on any subject touching the duties of their respective offices."

After receipt of the borrowed funds, U.S. Peat, Inc., withdrew from the project and failed to repay the loan. Upon its default the Bank sought to recover from the city pursuant to the guaranty. In an earlier decision, we held that the city's guaranty was unenforceable because the city had not accepted federal aid at the time it guaranteed the loan as required by 30 M.R.S.A. § 5153 (1978). *See Peoples Heritage Bank,* 566 A.2d 745. Following that decision, the Bank instituted the present action, asserting that Ayotte negligently misrepresented the city's status as a guarantor, later amending its complaint to allege that Preti, Flaherty, its counsel during the loan transaction, had committed malpractice. Preti, Flaherty filed a cross-claim against Ayotte, alleging that the Bank's damages, if any, resulted from Ayotte's negligence. The trial court granted summary judgment to Ayotte on the ground that as city solicitor he was immune from liability for the alleged negligent misrepresentation. Preti, Flaherty's appeal followed.

A summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ...

show that there is no genuine issue as to any material fact ... and that any party is entitled to judgment as a matter of law." M.R.Civ.P. 56(c). There is no doubt that Ayotte was acting in his capacity as city solicitor when he prepared the "Opinion and Certificate of Guarantor's Counsel." Although the parties disagree whether it was the city administrator or the Bank's counsel, Preti, Flaherty, who requested Ayotte's opinion, it is clear that the opinion was sought and given by Ayotte precisely because he was the city solicitor, the cost being included in his regular salary. The Bank wanted assurance that the city's guaranty was valid and it was given that assurance by the city solicitor, Ayotte. The question is whether Ayotte's action in issuing the opinion falls within the discretionary function immunity of the Maine Tort Claims Act.

█ The act provides discretionary function immunity to governmental employees for conduct within the scope of their employment. Section 8111(1) states that "employees of governmental entities shall be absolutely immune from personal civil liability for ... [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1) & (1)(C). Preti, Flaherty argues that Ayotte is an independent contractor and thus not an employee for the purposes of section 8111, and that he did not perform a discretionary function or duty in issuing his opinion.

Discretionary function immunity "insulates from personal liability a government employee who has been legislatively authorized to perform some discretionary function and has acted, or has failed to act, pursuant to that authorization." *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me.1987) (citation omitted). The statute broadly defines "employee" as "a person acting on behalf of the governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds." 14 M.R.S.A. § 8102. The definition of employee is sufficiently broad to encompass Ayotte's position. The city created the office of city solicitor to allow the city to benefit from the services of legal counsel. The city's charter and administrative code make clear that the city solicitor is to be consulted on a variety of legal matters. His office is at the heart of municipal governance. We have stated that the "basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by fear of personal liability and vexatious suits." *Darling*, 535 A.2d at 425 (quoting *Restatement (Second) of Torts* § 895D, comment b (1979)). This concern is especially relevant to an office that provides legal counsel to municipal officials on controversial issues.

Ayotte's designation as an independent contractor in the city's administrative code does not change his status for the purpose of the Tort Claims Act. The city charter, which establishes the office of city solicitor, and the lawful appointment of Ayotte to that office by the mayor and city council make it apparent that Ayotte was "a person acting on behalf of [a] governmental entity in [an] official capacity." 14 M.R.S.A. § 8102. Nor does the existence of Ayotte's private practice affect his designation as a municipal employee when he acts in his capacity as city solicitor.

█ Finally, Preti, Flaherty argues that even if Ayotte is a governmental employee for purposes of the Tort Claims Act, he should be denied immunity on the ground that the issuance of an opinion does not constitute a discretionary function within the meaning of section § 8111(1)(C). We construed the elements of discretionary function in *Darling* as follows:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision re-

quire the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Darling*, 535 A.2d at 426.

All four elements discussed in *Darling* are present in the instant case. The opinion of the city solicitor concerning the city's authority to guarantee the loan involved the basic governmental objective of promoting economic development in the city by facilitating the financing of a private industry to be located in Saco. Because the Bank would not issue the loan without the city's guaranty, as well as an assurance that the guaranty was valid, Ayotte's assurance on behalf of the city was essential to the realization of the city's objective. The opinion called for the exercise of judgment and expertise on the part of Ayotte, and he had the requisite authority pursuant to the city charter and the administrative code to issue the opinion.

The entry is:

Judgment affirmed.

All concurring.