STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-88

SUSAN HAMILTON,

Plaintiff

v.

DRUMMOND WOODSUM P.A., et al.,

Defendants

STATE OF MAINE
Cumberland, ss. Clerk's Office

NOV 20 2018

RECEIVED

ORDER

Plaintiff Susan Hamilton contends that she was terminated without due process by the University of Southern Maine after an investigation that wrongly concluded that she had created a hostile working environment. Her federal lawsuit against USM has been settled.

In this action Hamilton is suing Ann Chapman, who Hamilton alleges was hired by USM to perform the investigation. Hamilton has asserted that Chapman is liable for defamation, tortious interference with an advantageous economic relationship, and negligence. Chapman is an employee of Drummond Woodsum P.A., which is named as a defendant under the doctrine of respondeat superior.

Before the court are two motions filed by Drummond Woodsum and Chapman (collectively "Chapman"). The first is a special motion to dismiss filed pursuant to 14 M.R.S. § 556, the "anti-SLAPP" statute. The second is a motion to dismiss based on the statute of limitations and the immunity provisions of the Maine Tort Claims Act, 14 M.R.S. §§ 8110-11, and on the statute of limitations applicable to claims of defamation. 14 M.R.S. § 753. Hamilton has opposed those motions and has also filed a motion for leave to file a second amended complaint.

**Plaintiff–Guy Loranger, Esq.**
**Defendants–Russell Pierce, Esq.**

<u>Procedural History</u>

Hamilton's initial complaint was filed on February 28, 2018. On May 22, 2018, before her first complaint was served, Hamilton filed an amended complaint. On May 24, 2018 service of the amended complaint was made on both defendants.

On June 12, 2018 Chapman filed both a special motion to dismiss under 14 M.R.S. § 556 and a motion to dismiss pursuant to the Maine Tort Claims Act and the statute of limitations applicable to defamation claims.

On July 3, 2018 Hamilton filed oppositions to each of those motions, along with a separate motion of her own for leave to file a second amended complaint.

Recognizing that timely motions to amend should be freely granted, the court will grant Hamilton's motion to amend and will consider the proposed second amended complaint in connection with the pending motions to dismiss. *See Sherbert v. Remmel,* 2006 ME ¶ 8, 908 A.2d 622 (before considering dispositive motion, court should act on pending motion to amend in irder to determine whether amendment has cured the alleged defects in the complaint).

<u>Special Motion to Dismiss under 14 M.R.S. § 556</u>

The court will first address Chapman's motion under the anti-SLAPP statute because 14 M.R.S. § 556 provides that those motions may be entitled to priority on the docket.

In her amended complaint Hamilton alleged that USM selected Chapman from the Drummond Woodsum firm to perform a purportedly neutral investigation of a claim of racism against Hamilton. Amended Complaint ¶ 39. In her second amended complaint Hamilton further alleges, by way of elaboration, that Chapman performed and was paid for her investigation as an

independent contractor pursuant to an agreement between USM and Drummond Woodsum. Second Amended Complaint ¶¶ 39, 41-42.

Hamilton alleges, inter alia, that Chapman did not engage in a neutral investigation, that she withheld pertinent evidence from Hamilton, and that in her report to USM, Chapman made false and defamatory statements that caused Hamilton to lose her job. Amended Complaint ¶¶ 40, 46, 68-70, 90, 94; Second Amended Complaint ¶¶ 43, 49, 77-73, 106, 117.

Under 14 M.R.S. § 556, if the submission of Chapman's report constituted an exercise of her First Amendment right to petition the government, the burden would then shift to Hamilton to offer prima facie evidence that Chapman's petitioning activity was devoid of any reasonable factual support or any arguable basis in law and caused actual injury to Hamilton. *Nader v. Maine Democratic Party*, 2013 ME 51 ¶ 14 , 66 A.3d 571 ("*Nader II*).

The first step under the anti-SLAPP statute is to determine whether Chapman's report constituted an exercise of her right to petition as defined by the statute. *See Gaudette v. Mainely Media LLC*, 2017 ME 87 ¶¶ 11, 18, 160 A.3d 539. The final paragraph of section 556 defines a party's exercise of its right of petition to mean

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

As the Law Court noted in *Gaudette*, it has on occasion interpreted the above language as "broadly inclusive." 2017 ME 87 ¶ 12 (citation omitted).

3

Chapman argues that her report was a written statement submitted to an executive body and a written statement made in connection with an issue under consideration by an executive body or in a governmental proceeding and therefore falls within section 556. The court disagrees. In this case Chapman was not exercising her right of petition; she was instead submitting her report of an internal investigation that had been commissioned by USM. As the Law Court pointed out in *Gaudette,* the purpose of the right of petition is to seek redress from government. 2017 ME 87 ¶ 17. In *Gaudette,* even though the allegedly defamatory newspaper article at issue might have fit within the literal definition of petitioning activity in section 556, the Law Court concluded that the newspaper was not petitioning "on its own behalf" and therefore the anti-SLAPP statute was inapplicable. 2017 ME 87 ¶¶ 15, 17.

In this case Chapman's report to USM does not does not fall within the concept of a citizen's exercise of her constitutional right to petition the government. Even if her report meets the literal language of section 556's last paragraph, Chapman was not petitioning "on her own behalf." In *Gaudette* the Law Court looked to Massachusetts precedent in interpreting section 556. 2017 ME 87 ¶¶ 14-15. In an analogous context the Massachusetts Supreme Judicial Court has declined to apply the anti-SLAPP statute to claims brought against a psychologist hired by the Massachusetts Board of Registration in Medicine to assist in an investigation. *Kobrin v. Gastfriend,* 821 N.E.2d 60 (2005).

Applicability of the Maine Tort Claims Act

The Maine Tort Claims Act (MTCA) applies to both claims against governmental entities and claims against governmental employees. It expressly provides certain immunities to governmental employees that are set forth in 14 M.R.S. § 8111. Even where those immunities are

4

not applicable, it sets forth separate notice of claim requirements and a separate two-year statute of limitations for claims against governmental employees. *See* 14 M.R.S. §§ 8102(2-A) (providing that claims "permitted under this chapter" include all common law claims or actions against governmental employees), 8107, 8110.

Whether at this stage of the proceedings Chapman is entitled to the protection of the immunities, notice of claim requirements, and statute of limitations provided by the MTCA depends on whether, under the allegations in Hamilton's complaint, she would qualify as a governmental employee.

The Act defines governmental employees in pertinent part as follows:

> "Employee" means a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including elected or appointed officials . . . but the term "employee" does not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity.

14 M.R.S. § 8102(1).

As noted above, in the amended complaint, as supplemented by her second amended complaint, Hamilton alleges that Chapman was selected by USM as an allegedly neutral outside investigator and that she performed her investigation as an independent contractor for the University. Amended Complaint ¶ 39; Second Amended Complaint ¶¶ 39, 41-42.

The defense argues that the Law Court has found that various persons acting on behalf of governmental entities qualify as governmental employees within the meaning of the MTCA under circumstances which the defense contends are similar to the case at bar. *See, e.g., Kennedy v. State,* 1999 ME 85 ¶ 12, 730 A.2d 1252 (guardian ad litem); *Preti Flaherty Beliveau & Pachios v. Ayotte,* 606 A.2d 780, 782 (Me. 1992) (private attorney acting as city solicitor); *Hinkley v. Penobscot*

*Valley Hospital,* 2002 ME 70 ¶¶ 17-18, 794 A.2d 643 (private physician supervising physician's assistant employed by governmental health care provider); *Taylor v. Herst,* 537 A.2d 1163, 1165-66 (Me. 1988) (hospital psychiatrist sued for involuntary commitment decision).

In response, Hamilton points to the employee definition's exclusion of "a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity" and notes that her second amended complaint specifically alleges that Chapman was an independent contractor.

Law Court decisions establish that the designation of a person as an independent contractor does not exclude the possibility that the person would qualify as an employee for purposes of the MTCA. *See Preti Flaherty Beliveau & Pachios v. Ayotte,* 606 A.2d at 782; *Hinkley v. Penobscot Valley Hospital,* 2002 ME 70 ¶ 18.[1] That issue depends in part on the extent to which the individual in question is performing a governmental role and whether there is a need for the individual to be able to make decisions without fear of liability. *See id.; Taylor v. Herst,* 537 A.2d at 1166. However, as the Court noted in *Day's Auto Body Inc. v. Town of Medway,* 2016 ME 121 ¶ 17, 145 A.3d 1030, the common-law distinction between an employee and an independent contractor also guides the court's analysis.

Whether Chapman qualifies as a governmental employee for purposes of the MTCA is a close question that cannot be decided on a motion to dismiss. Under certain of the Law Court's prior decisions, she would appear to be an employee. *See Ayotte,* 606 A.2d at 782; *Hinkley,* 2002 ME 70 ¶ 17. To the extent that the common law distinction between employees and independent

---

[1] In the *Ayotte* case, the Law Court stated, "Ayotte's designation as an independent contractor in the city's administrative code does not change his status for the purpose of the Tort Claims Act." In the *Hinkley* case the court noted that the defendant doctor "contracted" to act as the supervising physician.

contractors is factored in, however, the allegations in Hamilton's second amended complaint suggest that Chapman might fall outside that category.

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted, and the complaint must be read in the light most favorable to the plaintiff. A claim shall only be dismissed when it appears beyond doubt that a plaintiff is not entitled to relief under any set of facts that she might prove in support of her claim. *See, e.g., In re Wage Payment Litigation,* 2000 ME 162 ¶ 3, 759 A.2d 217. A further factual record at trial or on a motion for summary judgment might resolve the issue one way or another,[2] but at this stage of the litigation Chapman's motion to dismiss based on the MTCA's statute of limitations, notice of claim requirement, and immunities is denied.

Statute of Limitations – Defamation

The lynchpin of Hamilton's complaints against Chapman are the statements made in Chapman's investigatory report, which are alleged to have been defamatory and which allegedly resulted in Hamilton's termination.[3] Hamilton's claims in count I (defamation) and count II (slander/libel per se) are both directly based on allegedly defamatory statements in the report.

The defense therefore argues, without objection by Hamilton, that Chapman's report is a document that is "central to the plaintiff's complaint" and that may therefore be considered on a

---

[2] For example, one issue is whether "neutral" investigators in cases of this nature are solely or primarily employed by governmental entities or whether they are also used by private employers.

[3] Hamilton's pleadings refer to Chapman's report as a "Draft Investigatory Report." *Id.* However, it is evident that this was the only report that Hamilton alleges was submitted to USM. See the repeated references to Chapman's report in Hamilton's pleadings – with "Report" almost always capitalized. Amended Complaint ¶¶ 68-71, 74-75, 79-85, 87, 90, 111-12; Second Amended Complaint ¶¶ 70-74, 77-78, 82, 82-87, 90-91, 106, 127-28.

7

motion to dismiss without turning the motion into a motion for summary judgment. *See Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶¶ 9-11, 843 A.2d 43. A copy of the report has been submitted to the court under seal.

The report is dated February 25, 2016 – two years and three days prior to the date that this action was commenced by the filing of Hamilton's initial complaint. Chapman therefore argues that Hamilton's defamation claims are barred by the two year statute of limitations set forth in 14 M.R.S. § 753.

Notably, in her second amended complaint Hamilton does not allege that Chapman's report, although dated February 25, was not provided to USM until February 28, 2016.[4] Instead, she alleges that the report was "published" by Sally Dobres, USM's Compliance Officer, to a USM Vice-President on February 28, 2016, Second Amended Complaint ¶ 83, and argues that the statute of limitations runs from that date.

The problem with Hamilton's argument is that for purposes of the statute of limitations, Hamilton's defamation cause of action against Chapman accrued at the time of Chapman's publication of the alleged defamation. *See Springer v. Seaman,* 658 F.Supp. 1502, 1511 & n.10 (D. Me. 1987); *Harrington v. Costello,* 7 N.E.3d 449, 453-54 (Mass. 2014). Any further dissemination of the allegedly defamatory report by USM officials who received the report would arguably constitute a re-publication by the recipients but does not toll the statute of limitations as against Chapman.

Accordingly, counts I and II of the amended complaint and second amended complaint are barred by the statute of limitations, and defendants' motion to dismiss those counts is granted. The

---

[4] Hamilton's second amended complaint thus has failed to "cure" the statute of limitations issue raised by defendants. *See Sherbert v. Remmel,* 2006 ME ¶ 8.

8

court therefore does not have to reach Chapman's arguments that, even under the allegations in the complaint, her report was privileged under the common law.

Statute of Limitations – Tortious Interference and Negligence

Hamilton has also asserted claims for tortious interference with an advantageous relationship (count III) and negligence (count IV). Chapman argues that those claims are dependent on Chapman' report and are therefore also subject to the defamation statute of limitations.

On her claim of tortious interference with and advantageous relationship claim under Maine law, Hamilton would have to prove (1) that a valid contract or economically advantageous relationship advantage existed; (2) that Chapman interfered with that contract or advantageous relationship through fraud or intimidation; and (3) that such interference proximately caused damages. *Rutland v. Mullen*, 2002 ME 98 ¶ 13, 798 A.2d 1104. In this case Hamilton does not allege that Chapman engaged in intimidation, but her pleadings essentially allege that Chapman's report constituted a fraudulent misrepresentation.[5]

Chapman cites various decisions that have held that when defamation claims are barred, other causes of action based on the same allegedly defamatory statements are also barred. Some of those decisions are based on the principle that the First Amendment concerns applicable to defamation claims apply equally to alternative causes of action such as intentional infliction of emotional distress and false light invasion of privacy. *E.g., Hustler Magazine v. Falwell*, 485 U.S.

_____

[5] To prove tortious interference by fraud, Hamilton must prove that (1) Chapman made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether that representation was true or false (4) for the purpose of inducing USM officials to rely on the representation, and. (5) USM officials justifiably relied on the representation to Hamilton's detriment. *Rutland v. Mullen*, 2002 ME 98 ¶ 14.

9

46, 50 (1987) (intentional infliction of emotional distress); *Levesque v. Doocy,* 560 F.3d 82, 88 n.5 (1st Cir. 2009) (false light). Chapman's statute of limitations defense in this case, however, does not stem from First Amendment concerns.

In *Gashgai v. Leibowitz,* 703 F.2d 10, 12-13 (1st Cir. 1983), the First Circuit observed that "we can see no logical reason" for differentiating between defamation claims and "false light" claims for statute of limitations purposes. However, Hamilton argues that this reasoning should not apply to counts III and IV in the instant case because, unlike defamation and false light invasion of privacy, publication is not an element of either tortious interference with an advantageous relationship or negligence.[6]

Although the court has not found any Maine law on this issue, courts in other jurisdictions have held that where claims of tortious interference with an advantageous relationship are based on allegedly defamatory statements, those claims are subject to the defamation statute of limitations. "Courts have overwhelmingly found that if a defamation claim fails on the statute of limitations, so too must a tortious interference claim based on the same conduct as the defamation claim." *Smith v. National Western Life,* 2017 Ohio 4184 ¶ 13, 92 N.E.3d 169, 173 (Ohio App. 2017), citing federal and state cases from Minnesota, Pennsylvania, Texas, New York, California, Kansas, New Jersey, and Florida. *Accord, Goldman v. Barrett,* 733 Fed. Appx. 568, 570-71, 2018 U.S. App. LEXIS 12111 (2d Cir. 2018).

In this case, where the tortious interference alleged by Hamilton consists of Chapman's report, the court concludes that it is likely that the Law Court would agree with decisions that have found that unless the defamation statute of limitations is applicable, plaintiffs could easily circumvent that statute by reframing their claim in terms of tortious interference.

---

[6] *See* Plaintiff's Opposition to Defendant's Motion to Dismiss dated July 3, 1018 at 22 n.4.

That logic does not, however, apply to Hamilton's negligence claim. While the allegedly wrongful act performed by Chapman for purposes of Hamilton's defamation and tortious interference claims was the authorship of her report, Hamilton's negligence claim includes allegedly wrongful conduct in the manner in which Chapman conducted her investigation. *See, e.g.,* Second Amended Complaint ¶¶ 67-70. Hamilton alleges that Chapman owed Hamilton a duty to objectively and thoroughly investigate that charge against Hamilton and that Chapman negligently violated that duty. *Id.* ¶¶ 126-27. Whether such a duty exists as a matter of law has not been challenged in Chapman's motion to dismiss, and the court does not find that Hamilton's negligence claim is barred by the two-year statute of limitations in 14 M.R.S. § 753.

The entry shall be:

1. Plaintiff's motion for leave to file a second amended complaint is granted.

2. Defendants' special motion to dismiss pursuant to 14 M.R.S. § 556 is denied.

3. Defendants' motion to dismiss the second amended complaint pursuant to the statute of limitations, notice of claim requirement, and immunities set forth in the Maine Tort Claims Act is denied.

4. Defendants' motion to dismiss counts I, II, and III of the second amended complaint (defamation, slander/libel per se, and tortious interference with advantageous relationship) pursuant to the statute of limitations set forth in 14 M.R.S. § 753 is granted.

5. Defendants' motion to dismiss count IV of the amended complaint is denied.

6. Defendants shall file an answer to plaintiffs' second amended complaint on or before December 7, 2018.

7. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November 20 , 2018

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 11/20/18
MC

11